## Case No. 7,379.

JOHNSON et al. v. CHIGAGO et al.

---

## Case No. 7,380.

JOHNSON et al. v. The CORIOLANUS.

[Crabbe, 239.] [1]

District Court, E. D. Pennsylvania. March 11, 1839.

Mr. Grinnell, for libellants.
F. E. Brewster, for respondent.

HOPKINSON, District Judge. The libellant John Johnson shipped, at New York, at eighteen dollars a month, for a voyage commencing on the 8th November, 1837. His libel states the voyage to be from New York to Mobile, thence to Marseilles, and back to a port of discharge in the United States; and that the ship arrived at Philadelphia on the 12th February, 1839, making fifteen months and four days, for which he claims, at eighteen dollars a month, $272 25, giving certain credits to be deducted. It appears, however, by a reference to the shipping articles, that the voyage contracted for at New York was for six calendar months, and a port of discharge in the United States. It also appears, by other shipping articles, that, at Marseilles, the six months having expired, a new voyage was contracted for, from Marseilles to Cette, thence to Rio Janeiro, and thence to a port of discharge in the United States. The new contract was made on 1st May, 1838; the rate of wages of the libellant, as well as of the rest of the crew, was reduced to twelve dollars a month. Some attempt has been made to prove that coercion or duress was used, to compel the men to sign these last articles. The proof is by no

---

means satisfactory, and I shall consider the rate of wages to be eighteen dollars a month, for the first six months, that is, to the 8th May, 1838, and to be, for the rest of the voyage, twelve dollars a month. This will make the total amount of wages, for the whole voyage, $216. The captain has rendered an account, in which he allows the libellant eighteen dollars a month to the 1st May, instead of to the 8th. On the second voyage he allows him twelve dollars a month, but terminates it on the 24th October, when the libellant was taken from the vessel by a police officer, by order of the captain, put into prison, and never after rejoined the ship, as she came away and left him there, the captain having previously sent his clothes on shore. I have no doubt that this whole proceeding, on the part of the captain, was altogether illegal and unjustifiable. I have repeatedly expressed my disapprobation of putting our seamen into foreign gaols and dungeons, at the mercy of the local police officers, for offences by no means requiring such severity. For ordinary misconduct, or insubordination, the power of the master, on board of his vessel, is amply sufficient for all the purposes of discipline and subordination, and it is only in cases of extraordinary violence, where the safety of the vessel or of those on board, requires that the offender should not be suffered to remain there, that he should be taken and imprisoned on shore. Every act of passion or indiscretion is called by the name of mutiny, and the seaman is hurried off to the unwholesome confinement and dirt of a prison, perhaps in a climate dangerous to life. In this case the man had been many months on board the ship, without any misconduct that called even for slight punishment, although it is said he was sulky and no seaman. He had a quarrel with the mate, about which different accounts are given, so that it is hard to say which was most wrong. On the second day after, when it might be supposed the matter was all over and forgotten, and nothing had occurred in the meantime to show any danger from it, a boat is sent to the ship with a police officer, and the man carried off to prison, without a hearing, or any examination of the circumstances of the case, except such as the captain chose to give to the consul. And here I would again correct an error into which captains are continually falling. They seem to believe that if they can get the consent or co-operation of the consul to their proceedings, it will be a full justification for them, when they come home. I wish them to understand that I will judge for myself, after hearing both parties and their evidence, of the necessity and propriety of these summary incarcerations; and the part the consul may have taken in it, will have very little weight with me. In all my experience, I have never known a consul refuse the application of a captain to imprison a seaman, nor to furnish a certificate, duly ornamented with his official seal, of the offence committed, of which he generally knows nothing but from the representations of the captain or officers of the vessel. I never suffer these certificates to be read: they are infinitely weaker than ex parte depositions. Our consuls, unfortunately, are merchants also; their profits and their living depend upon the business they can do, especially by the consignments of cargoes to them. It is, therefore, very important to them to have the good will of the captains of vessels, who may make a good report of them to their owners. Considering that this man was taken from the vessel, without any legal and justifiable cause, I have no hesitation in giving him his wages for the whole voyage. For the same reason I reject the credit claimed by the captain, for hiring another man in his place, amounting to $42; and for the additional reason that no evidence of any such hiring or payment was given.

In deciding upon the credits to be allowed, I shall take them as stated in the captain's book, which, although not strictly regular, has satisfied me of their truth. In the manner in which this case has been referred to me, I think a latitude is given to do what I truly think to be just between the parties. The account will stand thus:

Whole amount of wages.............. $216 00
Credits allowed .................... 78 40
$137 60

As to the claim of the libellant William Johnson, the administrator of George Adams, the facts are these: Adams died on board the ship, on the voyage from Marseilles to Rio, on the 10th August, 1838. It is the settled law of this court that the representatives of a seaman dying on the voyage, in the service of the ship, are entitled to his wages for the whole voyage. This is the only difference between the captain's account and the libellant's. The account stands thus:

Whole amount of wages............ $216 00
Credits allowed .................... 65 75
$150.25

Decree for the libellants, for the amounts due on their accounts respectively, and costs.

An appeal was taken by the respondent, upon this decree, to the circuit court of the United States for the Third circuit.

On the 6th May, 1839, the decree was affirmed, with costs. HOPKINSON, District Judge, made the following note of this affirmance, on the back of his manuscript opinion.

BALDWIN, Circuit Justice, agrees with the opinion of the district court, on all the points, and especially on the subject of im-

prisoning seamen by the authority of a captain. Seamen should be imprisoned, in foreign ports, only in a clear case of extreme necessity. He said he would probably have gone further in this case than the district judge had done, if it had come originally before him, and would have given the mariner not only his wages for the whole voyage, but have made him compensation for the imprisonment. Decree affirmed, with costs.